# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAMIEN ANTHONY ANDREWS,<br><br>          Petitioner,<br><br>     v.<br><br>NEIL H. ADLER, et.al.,<br><br>          Respondents.<br>_____/ | 1:10-cv-00895-OWW-DLB (HC)<br><br>FINDINGS AND RECOMMENDATION REGARDING PETITION FOR WRIT OF HABEAS CORPUS<br><br>[Doc. 1] |

Petitioner is a federal prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.

BACKGROUND

On August 3, 2007, Petitioner was sentenced in the United States District Court for the Southern District of California to sixty months imprisonment for violating 21 U.S.C. § 846, 841(A)(1), conspiracy to manufacture marijuana plants, and two counts of violating 18 U.S.C. § 1957, laundering money. Ex. 1, Declaration of Jennifer Vickers.

Petitioner is currently serving his federal sentence at the Taft Correctional Institution in Taft, California (TCI), and his projected release date is August 5, 2011 via good conduct time release. Id.

On September 26, 2007, Petitioner entered the Lift Quest (also called Life Line by Petitioner) drug program at California City Correctional Center (CCCC). He completed this program on March 24, 2008. Ex. 2, Declaration of Angela Person-Sibley.

1    On February 10, 2009, the Immigration and Naturalization Service (now known as the
2 Immigration and Customs Enforcement Agency) lodged a detainer against Petitioner for possible
3 deportation.  Ex. 3, Immigration Detainer, <u>Notice of Action</u>.
4    Petitioner filed the instant federal petition for writ of habeas corpus on May 18, 2010,
5 claiming he is entitled to RDAP credit for the drug program he completed at CCCC.  He also
6 challenges his exclusion from early release consideration because of his immigration detainer.

DISCUSSION

7
8  I.    <u>Subject Matter Jurisdiction and Venue</u>
9    Writ of habeas corpus relief extends to a person in custody under the authority of the
10 United States.  <u>See</u> 28 U.S.C. § 2241. Writ of habeas corpus relief is available if a federal
11 prisoner can show he is "in custody in violation of the Constitution or laws or treaties of the
12 United States." 28 U.S.C. § 2241(c)(3).  To the extent Petitioner seeks to challenge the "fact or
13 duration of confinement," this Court has jurisdiction under 28 U.S.C. § 2241.  In addition,
14 pursuant to § 2241, venue is proper in this case because Petitioner was confined at TCI in Taft,
15 California, at the time he filed the instant petition. <u>Hernandez v. Campbell</u>, 204 F.3d 861, 864
16 (9th Cir.2000).
17 II.    <u>Exhaustion of Administrative Remedies</u>
18    Before filing a petition for writ of habeas corpus, a federal prisoner challenging any
19 circumstance of imprisonment must first exhaust all administrative remedies.  <u>Martinez v.</u>
20 <u>Roberts</u>, 804 F.2d 570, 571 (9th Cir. 1986); <u>Chua Han Mow v. United States</u>, 730 F.2d 1308,
21 1313 (9th Cir. 1984); <u>Ruviwat v. Smith</u>, 701 F.2d 844, 845 (9th Cir. 1983).  The requirement that
22 federal prisoners exhaust administrative remedies before filing a habeas corpus petition was
23 judicially created; it is not a statutory requirement.  <u>Brown v. Rison</u>, 895 F.2d 533, 535 (9th Cir.
24 1990).  Thus, "because exhaustion is not required by statute, it is not jurisdictional." <u>Id</u>.  If
25 Petitioner has not properly exhausted his claims, the district court, in its discretion, may either
26 "excuse the faulty exhaustion and reach the merits or require the petitioner to exhaust his
27 administrative remedies before proceeding in court."
28

If the petitioner did not properly exhaust his administrative remedies, and such remedies are no longer available, he may have procedurally defaulted on his claims. See Francis v. Rison, 894 F.2d 353, 354-55 (9th Cir.1990) (applying procedural default rules to administrative appeals); see generally Murray v. Carrier, 477 U.S. 478, 485 (1986); Wainwright v. Sykes, 433 U.S. 72, 86-87 (1977); Tacho v. Martinez, 862 F.2d 1376, 1378 (9th Cir.1988). If a claim is procedurally defaulted, the court may require the petitioner to demonstrate cause for the procedural default and actual prejudice from the alleged constitutional violation. See Francis, 894 F.2d at 355 (suggesting that the cause and prejudice test is the appropriate test); Murray, 477 U.S. at 492 (cause and prejudice test applied to procedural defaults on appeal); Hughes v. Idaho State Bd. of Corr., 800 F.2d 905, 906-08 (9th Cir.1986) (cause and prejudice test applied to pro se litigants).

The Bureau of Prisons has established an administrative remedy procedure governing prisoner complaints. The procedure is set forth at 28 C.F.R. § 542.10 et. seq.  First, an inmate must attempt to resolve the issue informally by presenting it to staff before submitting a Request for Administrative Remedy. 28 C.F.R. § 542.13 (1999). If dissatisfied with the response, the prisoner may proceed with the formal filing of an Administrative Remedy Request. 28 C.F.R. § 542.14 (1999).  Upon denial by the institution, the prisoner may appeal the decision by filing a complaint with the Regional Director of the Bureau of Prisons. 28 C.F.R. § 542.15 (1999).  The Regional Director's decision may be appealed to the General Counsel in Washington, D.C. Id. Appeal to the General Counsel is the final step in the administrative remedy process. Id.

Respondent argues that although Petitioner claims he has exhausted the administrative remedies, the BOP has no record of such filings. Respondent submits evidence that BOP has no record of Petitioner ever using the formal administrative remedy process on this or any other topic. Ex. 1, Declaration of Jennifer Vickers.  Therefore, Petitioner's failure to utilize the administrative remedy procedure forecloses his opportunity to present the claims to this Court. Respondent submits that Petitioner's failure to proceed through the administrative remedy process, should not be waived and the petition should be dismissed.  Although exhaustion of the administrative process may be waived if futile, Petitioner presents no basis for finding it futile in

this case. Accordingly, the instant petition for writ of habeas corpus should be dismissed without prejudice. Even if Petitioner had exhausted the administrative remedies, there is no merit to this claims for the reasons explained *infra*.

III.     Analysis of Claim

    A.     CCCC's Life Quest Program is Not an RDAP

The Residential Drug Abuse Program (RDAP) is a particular three part drug treatment program administered solely by the BOP. The basis requirements for completion of RDAP are (1) completion of the unit based component; (2) follow-up services; and (3) transitional drug abuse treatment component (TDAT). See 28 C.F.R. § 550.53 (2009). The RDAP program was created as part of the BOP's implementation of section 3621(e)(2)(B). Section 3621(e)(2)(B) authorizes the BOP discretion to deduct up to a year of an inmate's sentence who has successfully completed the program. 18 U.S.C. § 3621.

        1.     BOP Has Discretion to Determine What Qualifies as RDAP

"All institutions must have non-residential drug abuse treatment services." 28 C.F.R. § 550.52 (2009); 28 C.F.R. § 550.55 (2008); 28 C.F.R. § 550.55 (2007). However, RDAP is available at selected BOP institutions only. 28 C.F.R. § 550.56 (2007); 28 C.F.R. § 550.56 (2008); see also 28 C.F.R. § 550.50 (2009). The BOP has the discretion to determine who may participate in the program and who may receive the early release incentive. 28 U.S.C. § 3621.

CCCC is a privately run institution which primarily houses low security criminal aliens, many of which have detainers. Ex. 2, Declaration of Angela Person-Sibley. CCCC does not have RDAP. Id. Petitioner did participate in the 500 hour Life Quest drug program at CCCC, however, it is not an RDAP. Indeed, it is CCCC program run directly by the Education Department, whereas BOP's RDAP is run by the Psychology Department. See Bureau of Prisons Program Statement No. 5330.11 § 2 (March 16, 2009). Id. Therefore, Petitioner's participation and completion of the Life Quest program does not qualify as completing an RDAP under the first requirement.

        2.      <u>There is no "Settled Expectation" in Receiving Early Release</u>

Petitioner claims he has a "settled expectation" for early release because he was specifically told he would be eligible. However, Petitioner enrolled in the Life Quest, not RDAP. Complaint, Ex. B. On September 27, 2007, one of Petitioner's supervisors in the Life Quest program noted that he "joined the program only because his friends said it was interesting." Ex. 4, Life Quest Summary of Interview/ Change of Status Form. Moreover, "a prisoner's expectation of early release may only arise when the BOP makes a lawful determination of the prisoner's eligibility and then informs the prisoner of such eligibility." <u>Bowen v. Hood</u>, 202 F.3d 1211 (9th Cir. 2000), quoting <u>Furguiel v. Benov</u>, 155 F.3d 1046, 1049 (9th Cir. 1998). The BOP has never notified Petitioner that he was eligible for early release. Thus, Petitioner does not have a "settled expectation" in early release.

B.     <u>Petitioner's Detainer Makes Him Ineligible for Early Release</u>

The Code of Federal Regulations in section 550.55 outlines the requirements for early release and lists those inmates who are ineligible for early release. The first inmates ineligible are those who have an Immigration and Customs Enforcement (ICE) detainer. 28 C.F.R. § 550.55(b)(1) (2009). This exclusion was also listed in the Code of Federal Regulations in 2007 and 2008-the time when Petitioner participated in the CCCC programs. See 28 C.F.R. § 550.58(a)(I) (2007); 28 C.F.R. § 550.58(a)(I) (2008). Therefore, there is no basis to Petitioner's claim that the detainer exclusion is being applied to him retroactively.

Petitioner is also ineligible for early release because the detainer prevents him from successfully completing RDAP. The last requirement for completion of RDAP requires the inmate be released into the community. Inmates with a detainer cannot be released to the community because they pose a particular flight risk. This rationale for not allowing participation of inmates with ICE detainers in TDAT or other RRC programs has been upheld in the Ninth Circuit. <u>McLean v. Crabtree</u>, 173 F.3d 1176 (9th Cir. 1999). There, the Court found the BOP had the discretion and authority to implement and administer the RDAP program. <u>Id</u>. at 1182. It was a valid exercise of the BOP's discretion to exclude inmates with detainers given the inherent flight risk. <u>Id</u>. at 1184.

5

Case 1:10-cv-00895-OWW-DLB   Document 10   Filed 09/22/10   Page 6 of 7

1   C.   There is no Liberty Interest in a Particular Drug Program Or Early Release

2   An inmate has no right to a specific educational or vocational program in prison, or to be
3   transferred to another institution to participate in a program. See Rhodes v. Chapman, 452 U.S.
4   337, 348 (1981); Montanye v. Haymes, 417 U.S. 236, 243 (1976). Section 3621(e)(2)(B) does
5   not create a liberty interest in sentence reduction. Jacks v. Crabtree, 114 F.3d 983, 986 n.4 (9th
6   Cir. 1997). More specifically, denial of the one-year reduction does not "impose atypical and
7   significant hardship on the inmate in relation to the ordinary incidents of prison life" which
8   would implicate a liberty interest. See Sandin v. Conner, 515 U.S. 472, 484 (1995). "In fact,
9   denial merely means that het inmate will have to serve out his sentence as expected." McLean,
10  173 F.3d at 1185.

11  Petitioner does not have a liberty interest in obtaining early release. Congress created
12  section 3621(e)(2)(B) as an incentive for inmates to participate in drug treatment. The
13  implementation of the incentive was left to the sole discretion of the BOP, and BOP rationally
14  exercised such discretion by excluding inmates with immigration detainers. Accordingly,
15  Petitioner's claim should be denied.

16                              RECOMMENDATION

17  Based on the foregoing, it is HEREBY RECOMMENDED that:

18  1.   The instant petition for writ of habeas corpus be DENIED; and,

19  2.   The Clerk of Court is directed to enter judgment in favor of Respondent.

20  This Findings and Recommendation is submitted to the assigned United States District
21  Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 304 of the
22  Local Rules of Practice for the United States District Court, Eastern District of California.
23  Within thirty (30) days after being served with a copy, any party may file written objections with
24  the court and serve a copy on all parties. Such a document should be captioned "Objections to
25  Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served
26  and filed within fourteen (14) days after service of the objections. The Court will then review the

27
28

Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

    IT IS SO ORDERED.

    Dated: **September 22, 2010**     /s/ **Dennis L. Beck**
UNITED STATES MAGISTRATE JUDGE